UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON ATHLETIC ASSOCIATION, | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO.  10-cv-10740-DPW |
| CAFEPRESS.COM, INC., ZAZZLE INC., AND JOHN DOES 1-10 | |
| *Defendants*. | |

**DEFENDANT ZAZZLE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

Defendant Zazzle Inc. ("Zazzle") hereby opposes Plaintiff's Motion for A Preliminary

Injunction (dckt #6) filed by the Boston Athletic Association ("BAA" or "plaintiff") on April 30,

2010.  In support of its opposition, Zazzle relies on the accompanying Affidavit of Charles

Ohiaeri and states as follows:

**INTRODUCTION**

BAA's Motion for Preliminary Injunction must be denied because the BAA can not show

a likelihood of irreparable harm.  Reserving all rights, and to avoid dispute, Zazzle has

voluntarily ceased all conduct that the BAA seeks to enjoin, by (a) removing from its website

products bearing either the logo and/or any term of which the BAA complains, (b) blocking

searches on its website zazzle.com using the term "Boston Marathon" and the other terms about

which the BAA complains, and (c) committing in Mr. Ohiaeri's affidavit testimony to maintain

those search blocks and not to sell any products displaying either the logo and/or terms about

which the BAA complains during the pendency of this lawsuit.  Without a likelihood of future

alleged infringement, a preliminary injunction is unnecessary and plaintiff's motion should be denied.

Though the lack of irreparable harm alone warrants denial, the motion should also be denied because an injunction would unfairly, unnecessarily damage Zazzle's goodwill and reputation. Moreover, and also dispositively, the BAA has failed to demonstrate a likelihood of success on the merits: namely, that customers would likely confuse products formerly found on zazzle.com for officially sponsored Boston Marathon merchandise. Zazzle therefore requests that the Court deny plaintiff's motion.

## FACTUAL BACKGROUND

### A.    Zazzle and Zazzle.com

Zazzle operates zazzle.com, an online retail platform designed to enable individuals, professional artists, and major brands to create and offer unique, customized products. Affidavit of Charles Ohiaeri, June 9, 2010 ("Ohiaeri Aff."), at ¶2. On zazzle.com, individuals and artists can upload their own designs or users can create products using designs licensed by Zazzle from top-tier brands such as Disney, Lucas Arts, Hallmark, and Mattel. Id. Zazzle offers a wide range of blank products, such as t-shirts, mugs, buttons, etc., that users can customize with digital images. Id. Zazzle products can only be purchased online at zazzle.com. Id.

Zazzle's website is an "on demand" platform. Ohiaeri Aff. ¶3. This means that although the products that are displayed on zazzle.com appear very realistic, no products containing images uploaded to zazzle.com are actually produced unless and until an order for such a product is received. Ohiaeri Aff. ¶3. As such, Zazzle does not have an inventory of products. Id. Until the product is ordered, Zazzle retains only virtual products, that is, website images. Id. ¶¶3, 4.

For example, a user can upload his or her digital image and create a product, such as a t-shirt or mug, with the image displayed as artwork on that product. Ohiaeri Aff. ¶4. The user can then purchase the product he creates for himself, or offer the product for sale to others through his online store, hosted by Zazzle. Id. Although the t-shirt and mugs are visible as images within the user's online store and the Zazzle marketplace, there is no physical inventory of the specific customized product. Id. Only after an order for a specific product has been placed does Zazzle print the digital image onto the blank product and ship the product to the user or the user's customer. Id. ¶¶3, 4.

If a user elects to offer his product design for sale to others, he will first "tag" the product with words or phrases chosen by the user. Ohiaeri Aff. ¶6. If a product design uses a term, the user may tag the product with that term. Id. Another zazzle.com customer seeking a design using that term must enter that term as a search term in zazzle.com's search engine in order to find the product design. Id. The zazzle.com search engine searches through the individual keywords or "tags" that the user has posted on his product and includes all matching product images in search results. Id.

Because Zazzle produces the product only after a customer places an order, Zazzle does not have any inventory of product containing the terms or logo about which the BAA is complaining. Ohiaeri Aff. ¶5. Moreover, because of the manner in which customers search for products, Zazzle has never advertised merchandise referring to the Boston Marathon or any other term of which the BAA is complaining. Id. ¶6.

**B.    Additional Facts Relevant to the Instant Dispute**

Zazzle has never identified any products on zazzle.com as official products of the Boston Marathon or its sponsor. Ohiaeri Aff. ¶13. Zazzle never intended or wanted to give the

impression, nor did it do anything to foster the impression, that the products on its website were official products of the Boston Marathon or its Sponsor.  Id.

Zazzle respects intellectual property rights and takes allegations of infringement very seriously.  Ohiaeri Aff. ¶7.  Zazzle's terms of use expressly forbid the uploading of content that violates the rights of any third party, and users warrant that the material they upload does not infringe on the rights of others.  Id.  Moreover, users agree to hold Zazzle harmless against any claims of violation of rights of others.  Id..  Each time a user posts a design to be hosted by Zazzle, he or she reaffirms his or her agreement to these terms, and Zazzle relies on its users' representations in conducting its business.  Id.  Zazzle does not intend to infringe any third party's copyrights or trademarks.  Id.

As an additional safeguard against infringement, Zazzle has implemented procedures to allow intellectual property owners and others to notify Zazzle and content owners if a product infringes the rights of any third party or otherwise violates Zazzle's acceptable content guidelines.  Ohiaeri Aff. ¶8.  For example, every product page contains a "Report Violation" link that allows a person to report a copyright or other violation.  Id..  Additionally, the "Help" section of the website includes information about copyright and trademark and provides contact information to report questionable images.  Id..  When a questionable product is called to Zazzle's attention, Zazzle makes prompt efforts to review the notice and take appropriate action, including removing the allegedly infringing product image.  Id.

The BAA, however, did not contact Zazzle using one of the above notification procedures prior to commencing the lawsuit.  Id. ¶9.  Thus, Zazzle first learned of the BAA's claims when it was served with the summons and complaint in this matter.  Id. ¶9.

On or before May 21, 2010, Zazzle (a) voluntarily removed from its website all images of the products bearing either the logo and/or terms of which the BAA complains in its complaint, and (b) blocked searches on zazzle.com of the terms about which the BAA complains so that if a user types in "Boston Marathon", or another of the terms about which the BAA complains ("Boston 26.2", Run Boston 26.2", "Boston Marathon Qualifier", and "Boston Qualifier"), the resulting search page contains no products.  Ohiaeri Aff. ¶10.  Zazzle's counsel informed BAA's counsel on May 21, 2010 that it had taken such action.  Id.  Zazzle has represented that it has no intention to, and has committed to the Court in Mr. Ohiaeri's affidavit that it will not during the pendency of this case, (c) fill any product orders for any product using either the logo and/or terms about which the BAA complains in its complaint or (d) enable or permit any searches of zazzle.com during the pendency of this lawsuit using any of the terms about which the BAA complains in its complaint.  Id. ¶11.  Zazzle acted voluntarily to avoid dispute and to minimize its costs of defense, and without conceding any issue and reserving all rights.  Ohiaeri Aff. ¶¶10, 11.

Prior to removing the images and disabling the search terms, Zazzle sold fewer than 500 items either (a) bearing the terms about which the BAA complains in its complaint, or (b) sold from pages produced by searches using those terms even if the product did not use those terms.  .  Ohiaeri Aff. ¶12.  Of these items, fewer than 130 products bore the terms about which the BAA complains in its complaint.  Id.  Of those, fewer still used the term Boston Marathon.  Id.  No product whatever was sold bearing the BAA's unicorn logo.  Id.

An injunction would harm Zazzle's excellent reputation and good will by causing its customers to wrongly conclude that Zazzle had infringed on the BAA's trademarks, thus damaging its well-earned reputation.  Ohiaeri Aff. ¶14.  Moreover, Zazzle has relationships with

owners of intellectual property, including licensing relationships with major brands that allow

Zazzle customers to use logos and designs of the brands to purchase customizable products.  Id.

An injunction might also cause such owners of intellectual property to be less likely to engage in

such relationships with Zazzle by causing them wrongly to conclude that Zazzle does not respect

intellectual property rights.  Id.

## ARGUMENT

In determining whether to issue a preliminary injunction in a trademark dispute, the court

should weigh the following four factors:

> (i) the plaintiff's likelihood of success on the merits; (ii) whether the plaintiff
> risks suffering irreparable harm if the injunction is not granted; (iii) whether such
> injury outweighs the harm that injunctive relief would cause for the defendant;
> and (iv) whether the public interest would be adversely affected by granting or
> denying an injunction.

Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell, M.D., 129 F.3d 1, 3 (1st Cir. 1997).

Here, all four factors weigh against the grant of a preliminary injunction.

**A.      There is No Risk of Irreparable Harm to the BAA**

"The basis of injunctive relief in the federal courts has always been irreparable harm and

inadequacy of legal remedies."  Sampson v. Murray, 415 U.S. 61, 68 (1974) (quoting Beacon

Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959)); Charlesbank Equity Fund II v. Blinds

To Go, Inc., 370 F.3d 151, 163 (1st Cir. 2004) ("we hold that the district court acted well within

the encincture of its discretion in denying a preliminary injunction on the ground that [movant]

had failed to make the requisite showing of irreparable harm").

Plaintiff has failed to show a risk of irreparable harm for three reasons.

First, plaintiff argues that irreparable harm is presumed from a showing of a likelihood of

success on the merits in a trademark case.  Even if such a presumption had continued validity,

for the reasons stated in Section C below, plaintiff has not shown a likelihood of success on the merits of its trademark claim so no presumption arises.[1]

Second, though plaintiff purports to have submitted evidence of actual irreparable harm, its supposed evidence of lost sales and damage to reputation are merely conclusory arguments about consequences flowing from an assumed likelihood of confusion.  Plaintiff's Memo (dckt #7) at 28-29 ("Visitors to Defendants' sites might be duped"; "This could lead to reduced demand for BAA officially-licensed goods"; consumers "will inevitably associate" BAA with defendants' goods).  This is a presumption masquerading as evidence.  Plaintiff has submitted no proof of any lost sale, any incident of damage to its reputation, or any other actual irreparable harm.

Third, and dispositive of plaintiff's entire motion, there is demonstrably no risk of irreparable harm because Zazzle has already voluntarily ceased all conduct that plaintiff seeks to enjoin.  Zazzle has (a) voluntarily removed from its website all images of the products bearing either the logo and/or any of the terms of which the BAA complains in its complaint ("Boston Marathon", "Boston 26.2", Run Boston 26.2", "Boston Marathon Qualifier", and "Boston Qualifier", see Complaint (dckt #1) ¶ 28), and (b) blocked searches on zazzle.com of the terms of which the BAA complains so that if a user types in "Boston Marathon", or the other terms listed in the complaint, the resulting search page contains no products.  Ohiaeri Aff. ¶10.  Further,

---

[1]  Even if plaintiff had shown a likelihood of success, a presumption of irreparable injury is no longer justified after eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), which held that a prevailing party in a patent infringement case must prove actual irreparable harm and cannot rely on a presumption of irreparable harm.  Since eBay was decided, the First Circuit has not addressed the traditional presumption of irreparable harm, but other Courts of Appeals have ruled that under eBay, such a presumption is either invalid or questionable.  Salinger v. Colting, C.A. No. 09-2878-cv, 2010 WL 1729126, at *7 & n.7 (2d Cir. April 10, 2010) (slip op.) (after eBay, plaintiff seeking preliminary injunction in copyright case can not rely on a presumption of irreparable harm; "we see no reason that eBay would not apply with equal force to an injunction in any type of case"); North American Medical Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1227 (11th 2008) (eBay "calls into question whether courts may presume irreparable harm merely because a plaintiff in an intellectual property case has demonstrated a likelihood of success on the merits").

Zazzle has unconditionally committed to the Court that it will not, during the pendency of this case, (c) fill any product orders for any product using either the logo and/or the terms of which the BAA complains in its complaint or (d) enable or permit any searches of zazzle.com using any of the complained-of terms.  Id. ¶11.  Zazzle maintains no inventory of merchandise from which to make sales.  Id. ¶¶ 3, 4, 5.  In short, Zazzle has voluntarily addressed all of plaintiff's concerns.

Plaintiff has the burden of showing that allegedly infringing conduct will occur in the future.  Am. Bd. of Psychiatry & Neurology, Inc., 129 F.3d at 4.  "Absent likelihood of future infringement, there can be none of the ill effects that an injunction seeks to prevent: no loss of future profits, no loss of good will or reputation."  Id.  Given Zazzle's voluntary conduct and commitment, plaintiff can not meet this burden.  The Court in the exercise of its discretion should therefore deny the motion on this basis alone.  See id. at 4-5 (upholding denial of preliminary injunction, notwithstanding showing of strong likelihood of success and past conduct of defendant indicative of bad faith, where defendant in affidavit promised not to repeat infringing conduct) (discussing cases).  This is particularly true given the good faith shown by Zazzle in voluntarily addressing plaintiff's concerns, even though it disagrees with the merits of plaintiff's claims.  See Camel Hair & Cashmere Inst. of Amer., Inc. v. Assoc. Dry Goods Corp., 799 F.2d 6, 13 (1st Cir. 1986) (upholding denial of preliminary injunction given good faith of defendant in removing mislabeled coats from sales floor, "indicat[ing] it is most unlikely to sell the coats in the future").

Preliminary injunctions are meant to preserve the status quo pending final relief and to prevent irreparable injury to the plaintiff.  Am. Bd. of Psychiatry & Neurology, Inc., 129 F.3d at

4.  In light of Zazzle's voluntary actions, an injunction is unnecessary to accomplish these objectives.  Plaintiff's motion should therefore be denied.

### B.      A Preliminary Injunction Would Cause Zazzle Harm

Given that there is no risk of irreparable harm to plaintiff, the Court need not proceed any further in the preliminary injunction analysis.  In any event, however, whereas there is no need for an injunction to prevent harm to plaintiff, an injunction would likely harm Zazzle's reputation and goodwill.  Zazzle takes intellectual property rights very seriously and works to maintain a selling environment free from infringements.  Ohiaeri Aff. ¶7.  Through its policing efforts, including placing links on each product page enabling users to report violations and responding with appropriate action, including removal of infringing content, Zazzle has built a reputation in the community for respecting the intellectual property rights of others.  Id. ¶¶7, 8, 14.  A preliminary injunction would cause customers wrongly to conclude that Zazzle infringed on BAA's trademark rights and therefore did not respect intellectual property rights.  Id. ¶14.  Such a conclusion would negatively affect the good will Zazzle has worked hard to create and maintain.  Id.  Intellectual property owners, including major brand owners, would be less likely to do business with Zazzle if they believed that Zazzle does not respect intellectual property rights.  Id.

The likelihood of harm to Zazzle if the Court issues a preliminary injunction outweighs the utter lack of harm to plaintiff.  For this additional reason, plaintiff's motion should be denied.

### C.      The BAA Has Failed to Show a Likelihood of Success on the Merits

Again, the Court need not reach the plaintiff's likelihood of success on the merits of its claims, given the lack of risk of irreparable harm to plaintiff.  In any event, plaintiff is unlikely to succeed on the merits of its claims.

To demonstrate a likelihood of success on the merits of its claims, the BAA must show "1) use and therefore ownership of the mark 2) use by the defendant of the same mark or a similar one, and 3) likelihood that the defendant's use will confuse the public, thereby harming the plaintiff." Hasbro, Inc. v. Clue Computing, Inc., 66 F.Supp.2d 117, 121 (D. Mass 1999) (Woodlock, J.). The central issue in trademark infringement cases generally is the likelihood of confusion. See Boston Athletic Association v. Sullivan, 867 F.2d 22, 28 (1st Cir. 1989); WCVB-TV v. Boston Athletic Association, 926 F.2d 42, 45 (1st Cir. 1991) (stating that the only trademark right provided in the trademark statute is that to "prevent confusion").[2] The First Circuit has identified eight factors to be weighed in determining likelihood of confusion:

> (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.

Sullivan, 867 F.2d at 29 (internal citations omitted). The inquiry is whether the evidence, viewed in its entirety and in a light most favorable to the defendant, demonstrates a genuine issue of likelihood of confusion. Id.

The First Circuit has previously addressed what the BAA in particular must prove in order successfully to demonstrate the likelihood of customer confusion with respect to products such as t-shirts. Sullivan, 867 F.2d at 28-29. Specifically, the First Circuit stated that the relevant likelihood of confusion inquiry "focuses upon whether the purchasing public is likely to believe that the sponsor of the Boston Marathon produces, licenses, or otherwise endorses defendants' shirts." Id. In Sullivan, the defendants sold Boston Marathon t-shirts at the Boston Marathon exposition, along the race course, and in Boston-area retail shops. Id. at 30. The sales

---

[2] Likelihood of confusion is also the gravamen of a counterfeiting claim under 15 U.S.C. §1114(1)(a); Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 486-87 (1st Cir. 1981).

were largely seasonal and centered around the race date.  Id.  Advertisements for the merchandise were posted along the race course, at the race exposition, and in local area store windows.  Some purchases were sold under "hectic conditions," thus adding to the likelihood of confusion.  Id.; see also Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 489 (1st Cir. 1981) ("Courts have found less likelihood of confusion where goods are expensive and purchased after careful consideration.").  Under these specific facts, where the defendant intended to give the impression that his merchandise was "official," the use of the phrase "Boston Marathon" created a "rebuttable presumption" of confusion.  See Sullivan, 867 F.2d at 35.

In a later case also involving the BAA, the First Circuit emphasized that the trademark violation in Sullivan was fact-specific and centered on the fact that defendant intended to create a likelihood of confusion when he sold his t-shirts "during the event, permitting the customer to wrongly or confusedly think that his t-shirts were somehow 'official.'"  See WCVB-TV, 926 F.2d at 45 (discussing Sullivan).  While conceding that Sullivan discussed a "rebuttable presumption" of confusion where the phrase "Boston Marathon" was  used on shirts, the First Circuit read these words to mean

> that the Sullivan record indicated that the defendant wanted to give the impression that his t-shirt was an 'official' t-shirt, a fact that, in the sports world, might give a shirt, in the eyes of sports fans, a special 'cachet.'  It makes sense to presume confusion about a relevant matter (namely, official sponsorship) from such an intent, at least in the absence of contrary evidence.

Id.

The facts in this case are very different from Sullivan and demonstrate that Zazzle did not intentionally use BAA's trademark in order to establish an association to the BAA, or otherwise mislead customers into believing that merchandise sold on zazzle.com was "official."  The facts

also show that there is little likelihood that consumers would confuse products for sale on zazzle.com for official Boston Marathon gear.  As an initial matter, unlike in <u>Sullivan</u>, Zazzle products are not sold along the race route, in local stores near the race route, or at expositions sponsored by the BAA.  Customers can only purchase Zazzle merchandise on zazzle.com. Ohiaeri Aff. ¶2.  Additionally, Zazzle has never advertised in any way merchandise referencing the Boston Marathon.  <u>Id.</u> ¶6.  Zazzle never intended or wanted to give the impression, nor did anything to foster the impression, that the products on its website were official products of the Boston Marathon or its sponsor.  <u>Id.</u> ¶13.  This distinguishes zazzle.com from websites that do sell "official" BAA merchandise, which highlight that fact.  <u>See, e.g.</u>, Declaration of Guy Morse, Exs. 1, 2 & 3 (dckt #s 9-1, 9-2, and 9-3).  Thus, unlike in <u>Sullivan</u>, nothing about Zazzle's presentation of the products or sales transactions implied a relationship to officially sponsored merchandise.

Moreover, online customers can browse merchandise at their own pace, search for other vendors selling similar products, compare-shop instantly, and customize products for their individual purpose.  This venue is in contrast to those in <u>Sullivan</u>, which included sales made at stands set up along the race route and at expositions where purchases were made under "hectic conditions."  The proximity of sales to the race route and day give the impression that the merchandise is "official" or sponsored by the BAA, and the hectic conditions in <u>Sullivan</u> made it more likely that customers would be confused.  In contrast, customers visiting zazzle.com are not purchasing merchandise under pressured conditions, near the race route, at the time of the race, or otherwise under the false impression that it is "official" Boston Marathon gear.  The BAA has failed to show otherwise.

Finally, by comparing the BAA's screen shots of official BAA merchandise with its

screen shots of the products formerly found on zazzle.com, it is clear that the merchandise that was offered on zazzle.com was not "official" BAA gear.  Official Boston Marathon clothing has a distinctive look: it is made from sports-appropriate fabrics, is described as "running" merchandise, and often clearly displays the Boston Marathon logo.  See Declaration of Guy Morse, Exs. 1, 2 & 3 (dckt #s 9-1, 9-2, and 9-3).  The websites selling the official products label tout them as "Official."  Id.  The clothes are relatively expensive.  Id.

In contrast, the clothing formerly found on zazzle.com was more casual, informal clothing, consisting mainly of regular t-shirts and sweatshirts as opposed to ones described as appropriate for running.  See Declaration of Amy L. Brosius Exs. 2, 3 & 5.(dckt #s 8-2, 8-3. and 8-5.).  Nowhere on zazzle.com was there any indication that merchandise sold there was officially sponsored or licensed from the BAA.  The clothes were relatively inexpensive.  Id. With one exception, clothing advertised for sale on zazzle.com did not display the Boston Marathon logo.[3]  Based on the totality of the circumstances, it is unlikely that customers were confused into thinking that Zazzle was marketing "official" Boston Marathon merchandise.

Viewing the evidence as a whole, BAA has not shown a likelihood of customer confusion concerning whether products offered on Zazzle were official Boston Marathon products.  A review of the eight-factors likelihood of confusion test utilized in the First Circuit confirms this conclusion.

---

[3] Zazzle acknowledges that one t-shirt advertised for sale on zazzle.com improperly contained a replica of BAA's Boston Marathon logo.  However, no product bearing the BAA logo was ever purchased or produced.  Ohiaeri Aff. ¶12.  Moreover, even if such a product had been manufactured, it is unlikely that customers were confused and mistakenly believed that a t-shirt with casual, type-faced letters stating "Team Amy Boston 2005" was an officially sponsored Boston Marathon t-shirt, notwithstanding the inclusion of BAA's logo.  This single, isolated use of BAA's logo is certainly not enough to cause general customer confusion that the products on zazzle.com are "official."

1.      Similarity of the Marks (Factor 1)

Analysis of this factor weighs in Zazzle's favor.  The BAA is overreaching and attempting to protect generic terms that merely reference the Boston Marathon as an event.  The BAA has trademarked the phrase "Boston Marathon" and its logo.[4]  The phrase "Boston Marathon" is not similar to the other generic phrases about which plaintiff complains, "Boston 26.2," "Run Boston 26.2," or "Boston Qualifier," notwithstanding the fact that such terms may refer to the Boston Marathon.

Trademark law only provides a property right to the extent necessary to "prevent confusion."  See WCVB-TV, 926 F.2d at 45.  As discussed above, the confusion to be prevented in this case is that the product is sponsored by the BAA or is an official Boston Marathon product.  See id.  The BAA does not own every phrase relating to or referring to the event of the Boston Marathon.[5]  The inquiry is fact specific and must demonstrate that the terms under the totality of the circumstances are improperly confusing concerning whether the merchandise is officially sponsored by the BAA.

The marks as used on the Zazzle products were sufficiently different so as not to cause a likelihood of confusion.

2.      Similarity of the Goods (Factor 2)

Zazzle sells t-shirts, bags, mugs, and sweatshirts which by category are similar to products sold by the BAA.  However, that is not to say that the products are similar.  As previously mentioned, the BAA official merchandise is designed to appeal to runners.  The material is specific to running, it has a distinctive look and design, and it almost invariably

---

[4] As previously stated, Zazzle has never produced any product displaying the BAA logo.  Ohiaeri Aff. ¶12.

[5] The BAA's overreaching claims in this regard are reminiscent of its claim in WCVB –TV v. Boston Athletic Association, supra, that it could enjoin Channel 5 from televising the Boston Marathon without a license because by broadcasting the words "Boston Marathon" Channel 5 would infringe its trademark.  926 F.2d at 44.  The district court denied the BAA's preliminary injunction request and the First Circuit affirmed.

contains the official BAA logo.  In contrast, Zazzle products were for the more casual consumer.

They are not specifically marketed or designed for runners and no Zazzle product has ever been

produced that includes the BAA logo.  Ohiaeri Aff. ¶12.  Thus, this factor weighs in favor of

Zazzle.

3.      Channels of Trade, Advertising, and Purchasers (Factors 3, 4, and 5)

As previously argued, Zazzle's channel of trade is significantly different than the BAA,

notwithstanding the fact that the BAA and licensed sellers market products online.  Importantly,

Zazzle *only* sells products on line.  Ohiaeri Aff. ¶2.  Unlike other official sponsors, Zazzle does

not set up booths along the race route, in local stores near the race route, or at expositions

sponsored by the BAA.  Moreover, online customers can act at their leisure to buy their products

with great care, thus minimizing the risk of potential confusion.  Nor has Zazzle ever advertised

Boston Marathon products.  Id. ¶6.

Moreover, given the nature of zazzle.com, Zazzle customers would not be searching for

official Boston Marathon merchandise.  Instead, Zazzle customers would be looking for unique,

customizable merchandise that references the Boston Marathon as an event.  Thus, these factors

weigh in Zazzle's favor.

4.      Actual Confusion (Factor 6)

As the BAA admits, there is no evidence that any customer was actually confused into

believing that Zazzle products were official Boston Marathon merchandise.  This factor weighs

in Zazzle's favor.

5.      Defendant's Intent in Adopting Plaintiff's Mark (Factor 7)

Zazzle never intended or wanted to give the impression, nor did anything to foster the

impression, that the products on its website were official products of the Boston Marathon or its

sponsor.  Ohiaeri Aff. ¶13.  Zazzle.com never purported to sell "official" Boston Marathon merchandise.  Id.  Nothing about Zazzle's actions implied an intent to create the illusion that its products were officially sponsored merchandise.  Zazzle products, designed by its users, not Zazzle, referenced the Boston Marathon as an event, using mostly generic terms such as "Boston 26.2."  The BAA does not point to anything specific to prove Zazzle's intent to adopt the BAA's mark.  Thus, this factor also weighs in Zazzle's favor.

6.      Strength of Plaintiff's Mark (Factor 8)

Zazzle does not refute the strength of BAA's mark.  However, "'[t]he muscularity of a mark, in and of itself, does not relieve the markholder of the burden to prove a realistic likelihood of confusion.'"  Hasbro, Inc. v. Clue Computing, 66 F. Supp. 2d 117, 126 (D. Mass. 1999) (Woodlock, J.) (quoting International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 106 (1st Cir. 1996)).

The eight factor balance weighs in Zazzle's favor.  The factors confirm that the BAA has failed to show a likelihood of confusion and a likelihood of success on the merits of its claims. For this additional reason, the BAA's motion for preliminary injunction should be denied.

**D.      The Public Interest Would Not Be Adversely Affected by Denial of an Injunction**

Here, where the preliminary injunction sought against Zazzle is unnecessary to protect plaintiff's trademark rights, and plaintiff has not shown a likelihood of success on its claims in any event, the denial of its motion will not adversely affect the public interest.

**Conclusion**

For the reasons set forth above, Zazzle respectfully requests that the Court deny plaintiff's preliminary injunction motion.

## REQUEST FOR ORAL ARGUMENT

Zazzle believes that oral argument may assist the Court and wishes to be heard in

opposition to plaintiff's motion.

ZAZZLE INC.

By its attorneys,

 /s/ *Bruce Falby*
  Bruce E. Falby (BBO # 544143)
 Lauren Ann H. Pond (BBO #669241)
 DLA PIPER LLP (US)
 33 Arch Street, 26th Floor
 Boston, MA  02110-1447
 (617) 406-6000 (*telephone*)
 (617) 406-6100 (*fax*)
 *Bruce.falby@dlapiper.com*

Dated:  June 9, 2010

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on June 9, 2010.

/s/ Bruce E. Falby
Bruce E. Falby